UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------- X
SUSAN SWETZ, individually on behalf of herself and all others similarly situated,

        Plaintiffs,

  -against-

GSK Consumer Health, Inc.,

        Defendant.

--------------------------------------------------------- X

CASE NO. 7:20-cv-04731-NSR

**<u>DECLARATION OF DOUGLAS J. McNAMARA IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT AND MOTION FOR ATTORNEYS' FEES, LITIGATION COSTS AND SERVICE AWARDS</u>**

I, Douglas J. McNamara, hereby declare and state as follows:

1. I am an attorney duly admitted to practice before this Court. I am a partner at the firm of Cohen Milstein Sellers & Toll, PLLC ("CMST"), one of the law firms representing Plaintiffs in this Litigation.

2. CMST was appointed one of the Class Counsel in the above-captioned litigation. I submit this declaration in support of: (i) Plaintiffs' Motion for Final Approval of Settlement; and (ii) Plaintiffs' Motion for Attorneys' Fees, Litigation Costs and Service Awards. I am personally familiar with the facts set forth in this declaration. If called as a witness I could and would competently testify to the matters stated herein.

3. CMST has prosecuted this Litigation solely on a contingent-fee basis and has been at risk that it would not receive any compensation for prosecuting claims against Defendant GSK Consumer Health, Inc. ("GSK").

1

**I.     INVESTIGATION AND MANAGEMENT OF THIS ACTION**

4.     CMST began its investigation into GSK's false advertising in September of 2020. CMST reviewed publicly available documents, purchased sales data regarding the market for Benefiber and similar products, and conferred with other counsel. After communicating with potential plaintiffs, CMST asked to and began working with the existing counsel in *Swetz* in October of 2020, and provide our class action experience and information about the industry we obtained.

5.     Since its involvement in the case, CMST has actively participated in all aspects of the case, including, but not limited to: (1) case investigation; (2) drafting of an unfiled complaint and an amended complaint; (3) settlement discovery; (4) legal research; (5) drafting of motions and briefs; (6) participating in case strategy decisions; and (7) participating in mediation and settlement negotiations. These tasks required extensive legal research and attention to detail.

6.     Additionally, CMST participated in regular calls with Class Counsel. During these calls, various aspects of this litigation were discussed.

**II.     MEDIATION AND SETTLEMENT**

7.     Shortly after the Court's ruling on GSK's motion to dismiss in a different case (*White)*, the Parties engaged in settlement discussions. This included two mediation sessions before the Hon. Judge Morton Denlow (Ret.). The first mediation occurred on January 21, 2021. Despite agreement on some basis elements of a settle, the parties were unable to resolve the case. After a few more weeks of discussions facilitated by Judge Denlow, the parties had a second mediation on February 10, 2021.

8.     The matter did not resolve at mediation, however, the parties—with the assistance of Judge Denlow—continued to pursue settlement discussions for several weeks until they reached a settlement in principle. The parties then spent months working out the details in the Agreement,

which is the product of hard-fought, arm's length negotiations. On May 10, 2021, a settlement was reached between the Parties.

9. At all times, negotiations were adversarial, non-collusive, and conducted at arm's length.

### III. CMST'S LODESTAR AND LITIGATION EXPENSES

10. This declaration generally summarizes the work performed by CMST for Plaintiffs and the settlement class members in this litigation. As demonstrated below, CMST has worked diligently to perform tasks throughout the entire course of this litigation, including case investigation, drafting a complaint, amending the existing *Swetz* complaint, discovery, settlement discussions, motions for settlement approval and assistance with settlement administration for the Class Members.

11. Before initiating any action, Class Counsel conducted a thorough investigation of the claims, both legal and factual. Specifically, CMST thoroughly investigated and researched the claims and proceedings before the Better Busines Bureau's National Advertising Division, and researched the submissions, as well as purchasing and analyzing industry data to determine Defendant's market share and unit prices. This allowed Plaintiffs' Counsel to better evaluate the factual claims regarding GSK's representations on the Covered Products.

12. The attorneys from CMST, in addition to myself, who have worked on this Litigation are my associate, Julia Horwitz. I also consulted with my senior partners, Andrew Friedman and Victoria Nugent.

13. Not including the time expended in preparing the application for fees and expenses, the table below details the hours billed and the amount billed at current rates through August 1, 2021 for CMST's attorneys and paralegals:[1]

| Attorney | Total Hours | Hourly Rate | Amount |
|---|---:|---:|---:|
| **Douglas J. McNamara** | 50.75 | 840 | 42,630 |
| **Julia Horwitz** | 30 | 625 | 18,750 |
| **Victoria S. Nugent** | 3.75 | 880 | 3,300 |
| **Andrew N. Friedman** | 5.25 | 1025 | 5,381.25 |
| | | | |
| **Paralegal** | **Total Hours** | **Hourly Rate** | **Amount** |
| **Jennifer Horowitz** | 26.75 | 325 | 8,693.75 |
| | | | |
| **Total:** | **116.5** | | **78,755** |

This summary was prepared from contemporaneous, daily time records regularly prepared and maintained by CMST.

14. The attorneys of CMST billed this case at their usual and customary hourly billing rates, which have been approved by courts presiding over similar complex class action lawsuits, and which are commensurate with the prevailing market rates attorneys of comparable experience and skill handling complex litigation. *See, e.g., In re: Dental Supplies Antitrust Litig.,* Case 16-CV-696-BMC, Transcript of Civil Cause for Fairness Hearing (E.D.N.Y. June 24, 2019) at 21:12-20. (approving fees for CMST lawyers billing $517 - $885 (partners), $465 - $555 (associates), and $240 - $280 (associates)); accord *LLE One, LLC v. Facebook Inc.*, No 4:16-cv-06232-JSW, ECF No. 211 at 2-3 (N.D. Cal. Jun. 26, 2020); *Reynolds v. Fidelity Investments Institutional Operations Company, Inc. et al.*, Case 1:18-CV-423-CCE-LPA, Memo. Opinion and Order, ECF 92 (M.D.N.C. Jan. 8, 2020).

---

[1] If the Court requests, CMST can provide more detailed time entries describing the work of these attorneys and paralegals, as well as CMST's expenses.

15. During this Action, CMST incurred $3,755.62 in unreimbursed expenses. These expenses were reasonably and necessarily incurred in connection with the prosecution of this litigation. These expenses are reflected in the books and records of CMST and are a true and accurate summary of the expenses for this case. The chart below details the expenses incurred by category:

| CATEGORY | EXPENSE AMOUNT |
| --- | --- |
| Telephone, Conference Calls and Facsimile | 6.93 |
| Market Research | 3,400.00 |
| Legal Research (Lexis) | 39.50 |
| Legal Research (Westlaw) | 309.19 |
| **TOTAL** | 3,755.62 |

## IV. CMST HAS A LONG HISTORY REPRESENTING CONSUMERS

16. CMST has a lengthy history of representing consumers, employees, businesses and other clients in class action and other commercial litigation. A true and correct copy of the abbreviated CMST Firm Resume (for consumer cases) is attached as Exhibit A.

17. Cohen Milstein is one of the largest plaintiff-side litigation firms in the country. Cohen Milstein has been recognized as a "class-action powerhouse,"[2] achieving results across a wide range of practice areas, and is considered one of "America's 25 Most Influential Law Firms."[3] Cohen Milstein's Consumer Practice Group has also been recognized as a leader in the field – by courts, peers, and the legal press – for work on a wide range of consumer issues, ranging from safe drinking water, toxic or defective products, and false and deceptive advertising. The group is

---

[2] *Here Comes Treble*, Forbes (Aug. 27, 2003), https://www.forbes.com/2003/08/27/cz_mf_0827antitrust.html#7df201226fc2.

[3] *America's Most Influential Law Firms: The Forum 2018*, National Law Journal & The Trial Lawyer Magazine, https://www.thetriallawyermagazine.com/wp-content/uploads/2019/01/2018-the-forum.pdf (accessed Apr. 9, 2020).

"known for notching big wins for plaintiffs,"[4] and has been recognized as a Group of the Year by Law360 for several years running.[5] Members of the Consumer Practice Group served in leadership positions in many consumer protection cases that achieved excellent results for the class, including: *In re Anthem, Inc. Data Breach Litigation*, No. 5:15-md-2617-LHK (N.D. Cal.) (co-lead counsel, in case resulting in the then-largest data breach settlement in U.S. history); and *In Re: Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Practices and Prods. Liab. Litig.*, 15-md-2627-AJT-MSN (E.D. Va.) (co-lead counsel, in a case resulting in $36 million settlement involving toxic flooring); and *Khoday v. Symantec Corp.*, No. 11-cv-00180-JRT-TNL (D. Minn.) (sole lead, in a case where defendant failed to disclose that a product was available for free, resulting in a $60 million settlement).

18.   I am the main attorney on this matter for CMST. I have over 20 years of experience in complex litigation, MDLs, and class actions. This includes *In Re: Lumber* Liquidators, where the defendant sold flooring that contained toxic levels of formaldehyde. I assisted Co-Lead Counsel and Cohen Milstein Chair Steven Toll by leading offensive discovery efforts, drafting pleadings, and working with experts. Consumer counsel secured a $36 million settlement within 2 ½ years based on false statements made by a lumber retailer concerning its formaldehyde emissions. In *Khoday v. Symantec Corp.*, I served as the lead attorney and represented a class of purchasers of a product that the defendant Symantec failed to disclose could be obtained for free. I oversaw

---

[4] Shayna Posses, *Consumer Protection Group of the Year: Cohen Milstein*, Law360 (Jan. 25, 2019), https://www.law360.com/articles/1117702/consumer-protection-group-of-the-year-cohen-milstein.

[5] *See id.*; Joyce Hanson, *Consumer Protection Group of the Year: Cohen Milstein*, Law360 (Jan. 17, 2020), https://www.law360.com/articles/1233361/consumer-protection-group-of-the-year-cohen-milstein; *Law360 Names Practice Groups of the Year*, Law360 (Jan. 15, 2018), https://www.law360.com/articles/998948; Nathan Hale, *Class Action Group of the Year: Cohen Milstein*, Law360 (Jan. 20, 2017), https://www.law360.com/articles/883221/class-action-group-of-the-year-cohen-milstein.

discovery, deposed witnesses, retained and defended experts, and helped to negotiate a $60 million settlement that gave participating class members back more than 100 cents on the dollar for their out-of-pocket losses. Additionally, I served on the Plaintiffs' Steering Committee and was co-chair of the expert committee in *In re Apple Inc. Device Performance Litigation*, No. 18-md-2827-EJD (N.D. Cal.), where a $500 million settlement was approved. I am currently on the PSC for one track of plaintiffs in *In re American Medical Collection Agency, Inc., Customer Data Security Breach Litigation*, No. 19-md-2904-MCA-MAH (D.N.J.), a case involving the breach of sensitive medical and other personal information where motions to dismiss are currently pending, and activity is low. I was recently appointed to a co-lead position in *In re MGM Resorts International Data Breach Litigation*, No. 20-cv-376-JAD-NJK (D. Nev.), a data breach exposing the personally identifiable identification of more than 10.6 million guests. I have also taught as an adjunct professor at George Washington University School of Law and have authored articles in *Pace Law Review* and Law360 on class action issues,[6] and spoken at professional gatherings on class action practice.

      I hereby declare under penalty of perjury under the laws of the United States that the above is true and correct to the best of my knowledge.

Dated:  August 2, 2021

                                                                               Douglas J. McNamara

---

[6] Douglas McNamara et al., *Reexamining the Seventh Amendment Argument Against Issue Certification*, 34 Pace L. Rev. 1041 (2014); Douglas McNamara, *When Conjoint Analysis Is Not Enough For A Damage Model*, Law360 (Dec. 11, 2019), https://www.law360.com/articles/1226744; Douglas McNamara, Carriuolo v. GM *and the Future of the Overcharge Theory*, Law360 (June 2, 2016), https://www.cohenmilstein.com/sites/default/files/media.9100.pdf.